**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANICE LEAMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.    13-975 |
| GREGG B. WOLFE, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                            July 10, 2014

Currently pending before the Court are Cross-motions for Summary Judgment filed by

Plaintiff Janice Leaman and Defendant Gregg Wolfe.  For the following reasons, Plaintiff's

Motion is denied and Defendant's Motion is granted with respect to the Complaint in Confession

of Judgment; and Plaintiff's Motion is granted and Defendant's Motion is denied with respect to

the Counterclaim.

## I.      FACTUAL BACKGROUND

On September 14, 2010, Plaintiff Janice Leaman sued Defendant Gregg Wolfe in the

Philadelphia Court of Common Pleas seeking, in part, enforcement of agreements Wolfe had

made in the operation of the parties' court reporting partnership, Kaplan, Leaman & Wolfe

("KLW").  See Leaman v. Gregg Wolfe and Kaplan, Leaman and Wolfe, September Term, 2010,

No. 1181 (the "CP Action").  The parties attended a mediation in connection with this dispute on

January 11, 2012.  (Pl.'s Mot. Summ. J., Ex. 4, Decl. of Janice Leaman ("Leaman Decl.") ¶ 14,

Mar. 27, 2013.)  At that time, the parties entered into a Settlement Agreement to resolve the CP

action.  (Id.)  Pursuant to this Settlement Agreement, Wolfe agreed to make an upfront payment of $100,000 and a series of subsequent payments, for a total of $475,000.  (Pl.'s Mot. Summ. J., Ex. 1, at Ex. A ("Settlement Agreement").)

In conjunction with the execution of the Settlement Agreement, Wolfe executed a Judgment Note (the "Note") to secure his future payment obligations.  (Id. at Ex. B ("Judgment Note"); Settlement Agreement ¶ 4.)  The Note required payments from Wolfe according to the following schedule:

• $50,000 on or before April 11, 2012

• Twelve monthly installments of $12,500 to commence on or before May 11, 2012

• Seventeen monthly installments of $10,000 commencing May 11, 2013

• One monthly installment of $5,000

The Note did not include the upfront payment of $100,000, as it was due within twenty days of the Settlement Agreement.  (Settlement Agreement.)

Under the terms of the Note, "[o]n nonpayment of any installment when due after a [sic] having been given a ten day notice by certified or overnight mail to cure any such payment default, all remaining installments and the additional One Hundred Thousand Dollar ($100,000) final installment shall, at the option of the holder, become immediately due and payable." (Judgment Note.)  Further, the Note provided that if it was placed in the hands of an attorney for collection, Wolfe would pay an attorney's fee of twenty percent of the amount due and owing on the defaulted Note.  (Id.)  Wolfe also authorized Leaman to seek a confession of judgment.  (Id.)

Wolfe concedes that, under the terms of the Settlement Agreement, he was to make payment to Leaman by the eleventh of each month.  (Pl.'s Mot. Summ. J., Ex. 2, Answer to

2

Complaint ("Answer") ¶ 10.)  He further admits that he *always* used the ten-day "grace period," which he had intentionally negotiated so that he could manage KLW's cash flow and other obligations.  (Id.)  On each occasion, from April 2012 through February 2013, Wolfe failed to pay the installment by the eleventh of each month, prompting Leaman to issue a Notice of Default to Wolfe, send the notice by overnight mail, and give Wolfe ten days to cure the default.  (Leaman Decl. ¶¶ 17–18 & Ex. 1.)  Nonetheless, Wolfe always paid the requisite amounts within the time period permitted to cure.  (Def.'s Mot. Summ. J., Ex. J.)

On December 11, 2012, Leaman, having yet to receive the installment payment due that month, sent Wolfe yet another default letter, which stated as follows:

> Dear Mr. Wolfe:
>
> This is a notice of default under the Settlement Agreement and Mutual Release dated January 11, 2012 ("Settlement Agreement").  Under the terms of the Settlement Agreement, you agreed to cause Kaplan, Leaman and Wolfe to pay to the undersigned a series of monthly installments, the next of which was due to be received on or before December 11, 2012 in the amount of $12,500.  As of 5:00 pm today, the payment has not been received and thus you are in default of our obligations under the Settlement Agreement and the Note you signed pursuant to that Agreement.  Of the nine payments that have become due under the Note, none have been remitted in a timely fashion.
>
> In accordance with Paragraph 1 of the Settlement Agreement, you now have ten days from the date of this letter to cure the default.  If the default remains uncured by that time, I will cause to be filed a Confession of the Judgment Note you executed on January 11, 2012.  In addition, and as is specifically set forth in the Settlement Agreement, except for the Confession of and Consent to Judgment provisions, upon your uncured default, all of the terms, agreements and conditions (including the Confidentiality and Non-Compete provisions) are rendered null and void.
>
> You are urged to be guided accordingly.

(Leaman Decl., Ex. 1 at December 11, 2012 Letter.)  Six days after Wolfe's receipt of that notice, his son passed away.  (Id. at December 20, 2012 Letter.)  By way of letter dated December 20,

3

2012, Wolfe's office informed Leaman of this tragic event, explained that Wolfe would not be in

to sign any checks, and indicated that Wolfe would have Leaman's check sent out by January 1,

2013.  (Id.)  Leaman responded on December 24, 2012, stating:

> Dear Mr. Wolfe:
>
> You were notified by letter dated December 12, 2012 (received and signed for in your office on December 13th) that you were in default of your obligations under the Settlement Agreement and Mutual Release dated January 11, 2012 ("Settlement Agreement").  Under the terms of the Settlement Agreement, you agreed to cause Kaplan, Leaman and Wolfe to pay to the undersigned a series of monthly installments, the next of which was due to be received on or before December 11, 2012 in the amount of $12,500.  As you are most acutely aware, it has not been received.  Rather, I have received a telephone call and an overnight letter from your Office Manager that the payment will not be made until January 1st in light of your son's passing.  Your unilateral modification of the Settlement Agreement is unacceptable.
>
> As sorry as I am for your son's passing, and the burden it puts on your younger son and the rest of his family, on the advice of counsel, your prior behavior of consistently remitting monthly payments in an untimely late fashion have left me no alternative but to enforce my rights under the Settlement Agreement.  In this regard, I would note the following:
>
> • Of the nine payments that have become due under the terms of the Settlement Agreement, none have been remitted by the agreed-upon due date.  I have been forced to remind you of your obligations and declare of [sic] default on each such occasion;
>
> • You have waited literally to the last moment of the cure period to remit payments due each and every month;
>
> • The latest payment was due December 11th.  *You received notification of this default almost a full week before your son's untimely passing yet you did nothing to cure this default.*
>
> • Instead of writing the check, you took the time to instruct your office manager to call me to say that the payment would be late, followed by an overnight letter from her that the payment would not be remitted until January 1;

- You agreed to the payment schedule and the attendant consequences in the event of a default in a document jointly drafted by our respective legal counsel and the Hon. Diane Welsh.

     Your past behavior, both before, during and after the litigation leading to the execution of the Settlement Agreement, including locking me out of an office that was leased in my name (with you signing my name), denying I was ever your partner, violating Court Orders, conveniently losing partnership records and documents, and engaging in delay tactics at every possible turn, all after my son's untimely passing, could not possibly justify your request that I now excuse your clear and indisputable default.

     Each of us has obligations that do not suspend upon the passing of a loved one. Just as there are consequences if your [sic] remit a car payment, a credit card payment or mortgage payment late, there are consequences if you do not make the payment as required under the Settlement Agreement. The late payment fee is significant and one to which you freely agreed to be bound.

     The 10 day period in which you might cure your default has passed. Without precedent and prejudice to any rights I have under the Settlement Agreement, you are advised that if payment is not received by 12 Noon on Thursday, December 27, 2012, I shall exercise my rights under Paragraph 4 of the Settlement Agreement. You are urged to be guided accordingly.

     I will be sending a donation to the Juvenile Diabetes Association in Justin's memory.

(Id. at December 24, 2012 Letter (emphasis in original).) Upon receipt of this letter, Wolfe hand delivered payment to Leaman's home on the morning of December 27, 2012. (Leaman Decl. ¶ 20.)

     Again, on January 11, 2013, Leaman sent out another default notice with respect to the payment due on that date. (Leaman Decl., Ex. 1 at January 11, 2013 Letter.) She did not receive that payment until January 21, 2013.

     In February 2013, Leaman had again not received the payment required under the Settlement Agreement and Note by February 11, 2013. (Leaman Decl. ¶ 21.) Accordingly, she

sent Wolfe another Notice of Default almost identical to the previous notices.  The last sentence of this letter, however, stated that "No further extensions will be granted and the terms of the aforementioned agreement will be strictly construed."  (Leaman Decl., Ex. 1 at Feb. 11, 2013 Letter.)  Nonetheless, Leaman still did not receive any payment from Wolfe at any time in February 2013.  (Leaman Decl. ¶ 22.)  Having given Wolfe ten days from the time he received the Notice of Default (on February 13, 2013), and having not received any payment from Wolfe by the expiration of the ten-day cure period, Leaman filed the present action against Wolfe on February 25, 2013, confessing judgment under the terms of the Settlement Agreement and Note. (Id.)  She eventually received that payment from Wolfe on March 6, 2013, after it was hand delivered to her husband's office in Pennsauken, New Jersey.  (Id. ¶ 23.)

Following Leaman's initiation of  the present Complaint in Confession of Judgment for Money Damages, the Court entered judgment in Leaman's favor and against Wolfe in the amount of $390,350.  On March 18, 2013, Wolfe filed a Motion to Strike and/or Open the Confessed Judgment setting forth the following defenses: (1) "Plaintiff failed to strictly comply with the warrants of attorney at issue"; (2) "under Pennsylvania law, the improperly calculated attorneys' fee of $65,000 (and even a properly-calculated fee of $62,500) for filing a confession of judgment is 'blatently unreasonable' and cannot be enforced.  See PNC Bank v. Bolus, 655 A.2d 997, 1000 (Pa. Super. 1995)"; and (3) "the consent of Defendant Wolfe to the confession of judgment procedure is not clear and manifest."  (Pl.'s Mot. Summ. J., Ex. 3.)  Leaman filed a Response to the Motion on March 28, 2013.  On April 11, 2013, the Court granted Wolfe's Motion and reopened the judgment "to permit a trial on the pertinent issues."  (Pl.'s Mot. Summ. J., Ex. 5.)

On April 30, 2013, Wolfe filed an Answer to the Complaint and asserted a Counterclaim alleging that Leaman breached her contract with Wolfe by suing under the Note because Wolfe was purportedly not yet in default at the time suit was filed.  Wolfe explained that, immediately upon receiving the Notice of Judgment, KLW's office manager called Wolfe—then out of the country on a trip—who instructed the office manager to verify the UPS tracking information for the February 2013 check.  (Pl.'s Mot. Summ. J., Ex. 3, at Ex. A, Declaration of Gregg Wolfe ("Wolfe Decl.") ¶¶ 23–25.)  The UPS tracking information showed that the check had been listed as "Out for Delivery" since February 21, 2013.  (Id. ¶ 25; Def.'s Mot. Summ. J., Ex. D.)  The office manager then called UPS and spoke with a representative to determine the whereabouts of the package.  (Wolfe Decl. ¶ 26.)  Wolfe subsequently had his counsel contact Leaman's counsel to explain the circumstances and ask that Leaman immediately withdraw or move to strike the judgment.  (Id. ¶ 27.)

On March 1, 2013, UPS confirmed in writing to both Wolfe's office manager and to Ms. Leaman that even though the package had been mailed on February 20, 2013, it was UPS—not KLW—that was responsible for the non-delivery.  (Id. ¶ 28; Def.'s Mot. Summ. J., Ex. E.) Specifically, UPS stated:

> Dear Janice Leaman,
>
> We sincerely apologize for your late delivery of package tracking number 1Z4253W00394601356, and the inconvenience that you were caused.
>
> We want to assure you that in the delivery of your Kaplan, Leaman & Wolfe shipment UPS takes full responsibility for the delivery problem that occurred.
>
> UPS is committed to provide superior service to our customers.  We regret that in this instance we failed to meet this commitment.

We value the trust you and Kaplan, Leaman & Wolfe place in UPS, and look forward
to the opportunity to serve you again.

(Id.)  Wolfe's attorney also forwarded this information to Leaman's husband/counsel requesting
that they move to strike the judgment.  (Wolfe Decl. ¶ 29; Def.'s Mot. Sum. J., Exs. F & G.)

Upon Wolfe's return to Philadelphia, he voided the lost check and issued a replacement
check for $12,500 to Leaman, which he had hand delivered to her home on March 5, 2013.
(Wolfe Decl. ¶ 30.)  As Leaman was not home at the time and her neighbor would not sign for
the package, the replacement check was delivered to her attorney/husband's office in
Pennsauken, New Jersey on March 6, 2013.  (Wolfe Decl. ¶ 31;  Def.'s Mot. Summ. J., Ex. H.)

On March 14, 2013, Wolfe's former counsel sent another letter to Leaman's counsel
outlining the various deficiencies in the confession judgment and again requesting that Leaman
strike the judgment.  (Def.'s Mot. Summ. J., Ex. I.)  Following Leaman's refusal to strike the
judgment, Wolfe filed the aforementioned Motion to Strike and/or Open Confessed Judgment
and for Stay of Enforcement, which was granted on April 11, 2013 to permit a trial on the
pertinent issues.

In early April 2014, both parties filed Motions for Summary Judgment.  Responses were
filed between April 24 and April 25, 2014, and Plaintiff filed a Reply in support of her Motion on
May 5, 2014.  These Motions are now ripe for judicial review.

## II.   STANDARD OF REVIEW

"Judgment by confession is a peculiar creature of state law; it has no counterpart in the
federal system."  1600 Penn Corp v. Computer Scis. Corp., No. Civ.A.06-5329, 2007 U.S. Dist.
LEXIS 23452, at *4 (E.D. Pa. Feb. 6, 2007).  The Federal Rules of Civil Procedure, particularly

Rule 60(b), governs the procedural aspect of a party's Motion to Open and/or Strike a Confessed

Judgment.  FDIC v. Deglau, 207 F.3d 153, 161 (3d Cir. 2000).  Rule 60(b) allows a court to

provide a party with relief after an order, final judgment, or proceeding for a host of reasons, as

long as the request is made upon a motion and just terms.  Republic First Bank v. Jemal, No.

Civ.A.10-1009, 10-1768, 10-176, 2011 WL 4087564, at *5 (E.D. Pa. Sept. 13, 2011).

Pennsylvania law, on the other hand, governs the substantive issues regarding whether to open or

strike the judgment.  Deglau, 207 F.3d at 166.

Petitions to strike and petitions to open are two very different creatures with two forms of

relief and separate remedies.  Id. at 167.  "A petition to strike off the judgment reaches defects

apparent on the face of the record."  Id.  A court should grant a motion to strike a judgment only

if a fatal defect or irregularity appears on the face of the judgment, and the defect is alleged in the

motion to strike.  Id. (citing Manor Bldg. Corp. v. Manor Complex Assoc., 645 A.2d 843, 846

(Pa. Super. Ct. 1994)).  The court must review both the confession of judgment clause and the

complaint itself to determine whether there is a defect.  Id.  Moreover, the facts averred in the

complaint must be taken as true.  Id.

 "[A] petition to open the judgment offers to show that the defendant can prove a defense

to all or part of the plaintiff's claim."  Id.  The Court may open a confessed judgment only where

a party presents evidence "which in a jury trial would require that the issues be submitted to the

jury."  Germantown Sav. Bank v. Talacki, 657 A.2d 1285, 1288–89 (Pa. Super. Ct. 1995).  Such

relief is to be granted only in "a limited number of circumstances," and specifically where the

moving party "acts promptly, alleges a meritorious defense and presents sufficient evidence of

that defense to require submission of the issues to the jury."  First Seneca Bank & Trust Co. v.

Laurel Mountain Dev. Corp., 485 A.2d 1086, 1088 (Pa. 1984). "To determine whether a triable issue exists, the directed verdict standard is used. . . . [and] the Court must view the evidence in the light most favorable to the petitioner and accept as true all evidence and proper inferences, which support the defense, while rejecting adverse allegations of the party obtaining the judgment." First Commonw. Bank v. Fresh Harvest River, LLC., No. Civ.A.10-237, 2014 WL 811831, at *4 (W.D. Pa. Mar. 3, 2014) (citing Deglau, 207 F.3d at 168). Notably, "[t]he opening of a confessed judgment is equitable in nature . . . and is within the Court's sound discretion." Id. (citations omitted). Since a motion to open a confessed judgment implicates equitable principles, the court may consider evidence in addition to the complaint and confession of judgment clauses. Sovereign Bank v. Catterton, No. Civ.A.03-5021, 2004 WL 834721, at *2 (E.D. Pa. Apr. 15, 2004). In addition, the court should consider whether the "'judgment will visit prejudice on the plaintiff, whether the defendant has a meritorious defense, and whether the default was the result of the defendant's culpable conduct.'" Resolution Trust Corp. v. Forest Grove, Inc., 33 F.3d 284, 288 (3d Cir. 1994) (quoting Fed. R. Civ. P. 60(b)). It should be noted, however, that in making a motion to open, a petitioner may not rest on mere assertions, but must offer "clear, direct, precise, and believable evidence of [the] meritorious defenses." Deglau, 207 F.3d at 168.

## III.   DISCUSSION

In the present case, Plaintiff now seeks summary judgment both as to her Complaint in Confession of Judgment and with respect to Defendant's Counterclaim. Defendant responds with his own Motion for Summary Judgment, alleging that the confessed judgment must be reopened and that he is entitled to attorneys' fees on his Counterclaim. The Court addresses each

argument individually.

A.    <u>Whether the Confessed Judgment Should Be Stricken or Opened</u>

Defendant has moved to strike and/or open the judgment on several grounds.  In particular, he first asserts that he did not default under the Settlement Agreement and Note because he tried to send timely payment, but was thwarted by factors beyond his control.  Second, he asserts that Plaintiff has miscalculated the amounts owed.  Finally, he contends that he did not clearly consent to a waiver of due process as is necessary for a confession of judgment.  Plaintiff responds on the ground that she fully complied with all procedural requisites to confession of judgment and has adequately proven a breach of contract entitling her to the judgment.

Pursuant to Pennsylvania law, the elements required to establish a breach of contract claim are (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages.  <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003); <u>J.F. Walker Co., Inc. v. Excaliber Oil Grp., Inc.</u>, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002); <u>see also</u> <u>Mainardi v. Prudential Ins. Co. of Am.</u>, No. Civ.A.08-3605, 2009 WL 229757, at *7 (E.D. Pa. Jan. 30, 2009).  Neither party, in the present matter, disputes the existence of the contract, *i.e.* the Settlement Agreement.  Rather, Plaintiff now argues that Defendant breached that contract in two respects.

First, Plaintiff asserts that Defendant consistently breached the contract by failing to make his payments by the eleventh of each month as required under the Note.  Rather, on the eleventh of each month, Plaintiff would send Defendant a notice of default and give him a ten-day notice to cure his default, as required by the Judgment Note.  On the tenth day of that period, Defendant

would remit his payment.  Plaintiff now argues that this ten-day cure period was not a "grace period," but rather a "cure period," and that the $100,000 penalty payment was waived only upon "timely payment" of all installments, not just as long as Defendant cured all his defaults.

The Court finds this argument meritless.  The Note itself provided that "[o]n nonpayment of any installment when due after a [sic] having been given a ten day notice by certified or overnight mail to cure any such payment default, all remaining installments and the additional One Hundred Thousand Dollar ($100,000) final installment shall, at the option of the holder, become immediately due and payable."  (Judgment Note.)  The Settlement Agreement was consistent, noting that, "[If] KLW or Wolfe fails to make any of the aforementioned payments within the stated time, he shall have ten (10) days within which to cure such default following written notice by certified or overnight mail.  Any failure to cure such failure to pay shall constitute a default of this Agreement and render null and void all of its terms, agreements and conditions, except for the Confession of and Consent to Judgment by Wolfe, set forth below." (Settlement Agreement.)  Thus, pursuant to the express terms of both the Settlement Agreement and Note, the $100,000 final installment and the right to confess judgment only became due after several conditions precedent: (1) nonpayment by the eleventh of the month; (2) a notice of default sent by Plaintiff by certified or overnight mail; (3) a ten-day cure period; *and* (4) the continued nonpayment of an installment after that ten-day cure period.  Nothing in the Settlement Agreement or the Note entitled Plaintiff to seek confession of judgment prior to the ten-day cure period.  Indeed, Plaintiff appears to concede as much by accepting payment from Defendant within the cure period on at least ten different occasions without ever seeking a confession of

judgment.[1]

Second, Plaintiff contends that Defendant clearly defaulted on his February 2013 installment.[2]  As set forth above, it is undisputed that in February 2013, Plaintiff had not received the stated payment required under the Settlement Agreement and Note by February 11, 2013. (Leaman Decl. ¶ 21.)  Despite sending another Notice of Default to Defendant, no payment was forthcoming until March 6, 2013, after the expiration of the ten-day cure period and after her filing of the present confession of judgment.  Upon receipt of the confession of judgment, Defendant instructed his office manager to verify the UPS tracking information for the check, which showed that the check had been listed as "Out for Delivery" since February 21, 2013. (Wolfe Decl. ¶¶ 22–25; Def.'s Mot. Summ. J., Ex. D)  On March 1, 2013, UPS confirmed in

---

[1]  This case bears similarity to the Pennsylvania Superior Court case of <u>Atlantic LB, Inc. v. Vribicek</u>, 905 A.2d 552 (Pa. Super. Ct. 2006).  In that case, the appellee tenants repeatedly made late rental and tax payments under their lease.  <u>Id.</u> at 559.  According to the express language of the lease, however, an event of default for purposes of forfeiture occurred only if Appellees failed to pay rent or other additional sum due within ten days of written notice from Appellant.  <u>Id.</u>  The court found that this provision made clear that the appellee tenants' nonpayment alone was insufficient under this lease to constitute an automatic event of default. <u>Id.</u>  The parties' agreement allowed Appellees two occasions of a ten (10)-day notice of nonpayment within one calendar year, after which, for the remainder of that calendar year, an automatic event of default occurred if the appellee tenants failed to pay an installment of rent or additional rent or any other sum payable under the lease when due, without notice from the landlord appellant.  <u>Id.</u>  The confessed judgment in that case was based on the appellant landlord's issuance of two notices of nonpayment in 2003, which were substantially cured within ten days of receipt of each notice, except for small disputed sums.  <u>Id.</u>
    The court determined that the appellee tenants were not in actual "default" as defined in the lease, "although they came dangerously close to default."  <u>Id.</u>  Applying the same interpretive principles to this case, the Court finds that Defendant also repeatedly came dangerously close to default by paying at the end of his ten-day cure period.  Nonetheless, he did not commit any actionable default by doing so.

[2]  Plaintiff explicitly states that she did not confess judgment for anything having to do with the December 2012 payment.  (Pl.'s Mem. Supp. Summ. J. 15.)

writing to both Defendant's office manager and to Plaintiff that even though the package had

been mailed on February 20, 2013, it was UPS—not Defendant—that was responsible for the

non-delivery.  (Wolfe Decl. ¶ 28; Def.'s Mot. Summ. J., Ex. E.)  Despite Defendant's attorney

forwarding this information to Plaintiff's attorney, Plaintiff refused to strike the confession of

judgment.

Plaintiff contends that under Pennsylvania law, it is well-established that payment is

deemed made only when received by the creditor.  On this point, Plaintiff cites to the

Pennsylvania Supreme Court decision in Romaine v. W.C.A.B. (Bryn Mawr Chateau Nursing

Home), 901 A.2d 477 (Pa. 2006), wherein the court held:

> Payment is defined as the "[p]erformance of an obligation, [usually] by the delivery
> of money."  Black's Law Dictionary 1150 (7th ed. 1999).  By agreement, the parties
> can consent to accomplish payment by furnishing, transferring, or delivering anything
> of value.  Further, as established in Grace Building [383 A.2d 937 (Pa. 1978)],
> payment by check constitutes a conditional payment of the obligation once it is
> received, the condition being its collectibility from the bank on which it was drawn.
> When the check is paid on presentment, the condition to which the payment was
> subject is performed and, what had been a conditional payment at the time of delivery
> of the check becomes an absolute payment.  Such payment then relates back to the
> date the check was delivered.  The date of payment for purposes of the obligation or
> the running of a statute of limitations becomes the date the check was delivered to
> the payee and not the date that the check was cashed or deposited or the date that the
> funds were transferred by the bank from which it was drawn.

Id. at 483.  With respect to post-dated checks, the Third Circuit has predicted that "the Supreme

Court of Pennsylvania would hold, absent special qualifying language in the controlling

instrument, that a delivered post-dated check constitutes payment on the date it bears."  Staff

Builders of Phila. v. Koschitzi, 989 F.2d 692, 695 (3d Cir. 1993).  Under this jurisprudence,

Plaintiff now argues that Defendant's undisputed failure to deliver the February 2013 payment

until March 6, 2013—twenty-three days past its original due date and thirteen days past the cure period—constitutes an unequivocal default for which Plaintiff was entitled to seek confession of judgment.

Plaintiff's argument, however, disregards the equitable doctrine of substantial performance.  As stated by the Pennsylvania Supreme Court: "[t]he equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects."  Morgan v. Gamble, 79 A. 410, 414 (Pa. 1911) (quotations omitted).  "The doctrine of substantial performance was devised as an 'instrument of justice.'"  In re Wolfe, 378 B.R. 96, 104–05 (Bankr. W.D. Pa. 2007).  "Equity abhors forfeiture, which should not be undertaken lightly."  Id. (citing Williams v. Vesley, 434 A.2d 196, 198 (Pa. Super. 1981)).  Determining whether a breach is "substantial enough" to justify the other contracting party deeming the transaction "at an end" is a matter of degree.  Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459, 468 (Pa. Super. Ct. 2003) (quoting Gray v. Gray, 671 A.2d 1166, 1172 (Pa. Super. 1996) (further quotations omitted).  That degree is determined by "weighing the consequences in the custom of men in the performance of contracts similar to the one that is involved in the specific case."  Id. (quoting Gray, 671 A.2d at 1172).  In determining materiality for purposes of breaching a contract, the court considers the following factors: (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (2) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer

forfeiture; (4) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.  Id. (citing Restatement (Second) of Contracts § 241 (1981)).  As a general rule, analysis of these factors generally requires the resolution of factual disputes, particularly where the materiality analysis turns on subjective assessments as to the state of mind of the respective parties.  Sabatini v. Its Amore Corp., 455 F. App'x 251, 257 (3d Cir. 2011).

        In the present case—given the undisputed facts of record—all of the foregoing factors weigh in favor of applying the equitable doctrine of substantial performance.  Under the fifth factor, Defendant has produced ample evidence that he made a good faith effort to comply with his obligations under the Settlement Agreement and Note.  The evidence clearly reflects that Defendant sent his February payment for delivery within the ten-day cure period and the UPS tracking information showed that the check had been listed as "Out for Delivery" as of February 21, 2013.  (Def.'s Mot. Summ. J., Ex. D)  Following Plaintiff's filing of the confession of judgment, Defendant inquired into the missing payment and, on March 1, 2013, UPS confirmed in writing to both Plaintiff and Defendant that the delivery error was entirely its responsibility and not Defendant's.  (Def.'s Mot. Summ. J., Ex. E)  Next, under the fourth factor, Defendant cured his failure immediately upon learning of the delivery error and returning from his out-of-town trip, by voiding the lost check and hand-delivering a replacement check in the correct amount on March 6, 2013.  Under the first and second factors, Plaintiff has not shown that she will be deprived of the benefit which she reasonably expected or that she could not be adequately

16

compensated for that part of the benefit of which she was deprived by the breach.  Plaintiff

received the installment payment within two weeks of the end of the cure period.  Moreover, by

all accounts, Defendant has made all required installment payments with no ongoing failure to

abide by the terms of the Settlement Agreement and Note.  (Wolfe Decl. ¶ 27 (attaching Quick

Books ledger and delivery receipts of payments made to Leaman from February 2012 through

March 2014.)[3]  Finally, under the third factor, it is undisputed that upholding the judgment will

cause Defendant to suffer substantial forfeiture since, in the event of a default, the Note permits

Plaintiff to immediately seek the entire remaining principal balance, obtain an additional

$100,000 installment from Defendant, and recover attorneys' fees.  In sum, Plaintiff stands to

recover a significant windfall without suffering any prejudice or deprivation of negotiated

benefit, other than the late payment of one installment.  The inequity of allowing such a result is

more pronounced by the fact that Defendant's default was the result of third-party failure and not

as a result of his own bad faith or willful failure to comply with his contractual obligations.  As

there are no genuine issues of material fact remaining on this issue, the Court finds that the

doctrine of substantial performance requires that this Court open the confessed judgment.

Without acknowledging the doctrine of substantial performance, but in an apparent effort

to avoid the operation of equitable principles, Plaintiff relies on the principle that "[w]here the

terms of a contract are clear and unambiguous, courts are required to give effect to that language.

. . . Where parties mutually agree to a term at the time of contracting, the term will generally be

enforced."  Guy M. Cooper, Inc. v. East Penn Sch. Dist., 903 A.2d 608, 613 (Pa. Commw. 2006)

---

[3] As of the date the Motions were filed, Defendant owed only six additional payments of $10,000 per month from April 2014 to September 2014, and a final payment of $5,000 thirty days thereafter.

17

(internal citations omitted).  Plaintiff goes on to argue that "'[t]he parties have a right to make their own contract, and it is not the function of the court to rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.'" (Pl.'s Mem. Supp. Summ. J. 17 (quoting Bombar v. W. Am. Ins. Co., 932 A.2d 78, 99 (Pa. Super. Ct. 2007)).)  As the Note in question gives Plaintiff the right to accelerate all amounts due, collect the $100,000 final installment, and receive attorneys' fees in the event of even one failure by Defendant to cure his default within ten days, Plaintiff asserts that she is entitled to enforcement of the Note's terms and remedies.

This argument, aside from ignoring the considerations of equity set forth by the Pennsylvania Supreme Court, has been explicitly rejected.  For example, in Miles v. Aramark Correctional Services, Inc., the plaintiff contended that the equitable doctrine of substantial performance could not apply because the contract's "clear and unambiguous" terms control. Miles, No. Civ.A.061759, 2007 WL 2404735, at *3 n.5 (E.D. Pa. Aug. 16, 2007), aff'd, 321 F. App'x 188 (3d Cir. 2009).  In so arguing, the plaintiff cited to the same well established principle that "[w]hen the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."  Id.  The court disagreed and held that even if the defendant did breach some of the contract's clear terms, "that does not foreclose the application of the doctrine of substantial performance."  Id.  It noted that "[t]he doctrine applies where a party has in some manner departed from the terms of an agreement, but the materiality of the departure is in question."  Id.; see also In re Wolfe, 378 B.R. at 105 (finding that although if a party to a contract fails to perform its obligations under the clear and unambiguous terms of the contract and its breach amounts to an immaterial failure, that party still may recover in an action

18

on the contract; "Perfect performance, in other words, is not required in an imperfect world.").

In sum, the Court finds that although Defendant technically defaulted on the Note in question, the equitable doctrine of substantial performance requires that the default be excused. Defendant offered a justifiable excuse for his default that eliminates any finding of bad faith or willfulness, all arrearages were paid in a timely fashion, Defendant has shown no continued pattern of failing to pay, Plaintiff has demonstrated no ongoing prejudice, and upholding the confessed judgment based on the default would work a substantial injustice. As the opening of a confessed judgment is based on equitable principles and is within the Court's sound discretion, the Court will deny Plaintiff's Motion and grant Defendant's Motion on this issue.[4]

### B.   Whether Plaintiff Is Entitled to Summary Judgment on His Counterclaim

Defendant also seeks summary judgment on his Counterclaim for breach of contract. Specifically, via his Answer and Counterclaim, Defendant alleged as follows:

44.   Under a plain reading of the Settlement Agreement, Wolfe complied with the cure provision of the agreement by causing "KLW to pay to Leaman" the installment of $12,500 within ten days of "written notice by certified or overnight mail" of any default. (*See* Settlement Agreement at Section 1.)

45.   Wolfe received notice of the alleged default on February 13, 2013 and caused KLW to issue and mail payment to Ms. Leaman seven days later, on February 20, 2013—within the 10-day cure period. (*See* Compl. at ¶ 10.)

46.   Nowhere does the cure provision expressly require Ms. Leaman to have "received" payment within the 10-day cure period; rather, under a plain reading of the Settlement Agreement, Wolfe's "causing KLW to pay," or mailing, the installment is all that is needed to cure any alleged default.

---

[4] Having found that there was no actionable default and that the confessed judgment must be reopened, the Court need not consider the issues of whether the amount owed under the confessed judgment is correct, whether Plaintiff's claim for attorneys' fees is correct, or whether Defendant consented to a waiver of due process as is necessary for a confession of judgment.

47. Accordingly, by mailing the payment via UPS on February 20, 2013, Wolfe effectively cured the default.

48. That UPS subsequently lost the payment during delivery does not place Wolfe in violation of either the Settlement Agreement or the Note.

49. As set forth above, Wolfe gave repeated notice to Leaman that no uncured default had occurred.

50. Despite being put on notice of same, Leaman refused to cause the judgment to be stricken or otherwise withdrawn.

51. Additionally, even assuming, *arguendo*, that an uncured default had occurred, the amount of the confessed judgment was greater than that authorized by the Settlement Agreement and Note as well as in excess of what would be owed under Pennsylvania law.

52. At the time Leaman filed the Complaint in Confession of Judgment, Wolfe had made, and Leaman had deposited, the first two payments of $100,000 and $50,000 as well as nine monthly payments of $12,500 (May 2012 – January 2013), for a total of $262,500, leaving a balance of $212,500 to be paid toward the $475,000 settlement amount.

53. The Complaint in Confession of Judgment states that the "Principal Sum" due and owing under the Settlement Agreement was $325,000 — $112,500 in excess of the actual amount owed.  (Compl. at ¶ 14.)

54. Even assuming Leaman included the $100,000 penalty in her calculation of the Principal Sum owed, the $350,000 claimed is still in excess of the amount owed (which, including the $100,000 penalty would actually have been $312,500).

55. The error in Leaman's calculation further affected her calculation of the 20% attorneys' fee by improperly inflating it by $2,500, to $65,000.

56. Moreover, under Pennsylvania law, a charge for attorneys' fees of even $62,500 for filing a confession of judgment is "blatantly unreasonable."

57. As set forth above, the warrant of attorney in the Settlement Agreement provides that "if either Party is in default and litigation is filed, the defaulting party shall be liable for the reasonable attorneys' fees and costs of the non-defaulting party."  (*See* Settlement Agreement, Section 4.)

20

58.   Leaman's confession of judgment against Wolfe when no uncured default had occurred placed her in default of the parties' Settlement Agreement and Note.

59.   Leaman's confession of judgment for an amount greater than that otherwise authorized by the Settlement Agreement and Note placed her in default of the parties' Settlement Agreement and Note.

60.   Leaman's perpetuation of the confession judgment despite being put on actual notice that no uncured default had occurred and that the confessed judgment was for an amount greater than that otherwise authorized by the Settlement Agreement and Note placed her in default of the parties' Settlement Agreement and Note.

61.   As a result of Leaman's breach of the parties' Settlement Agreement and Note, Wolfe was compelled to file his motion to strike and/or open the judgment and for stay of enforcement and to litigate this matter.

62.   Accordingly, pursuant to Section 4 of the parties' Settlement Agreement, Wolfe is entitled to an award of attorneys' fees and costs incurred in connection with this litigation.

(Answer & Countercl. ¶¶ 44–62.)

As set forth above, the elements required to establish a breach of contract claim are (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages.  Ware, 322 F.3d at 225; J.F. Walker Co., 792 A.2d at 1272. Defendant's Counterclaim fails at the second element, as he has not identified a breach of any duty on Plaintiff's part.  Under the Settlement Agreement, "if either party is in default and litigation is filed, the defaulting party shall be liable for the reasonable attorneys' fees and costs of the non-defaulting party."  (Settlement Agreement ¶ 4.)  Plaintiff's sole obligations under the contract included dismissal of the CP Action (id. ¶ 2), non-disclosure of any confidential terms of the Settlement Agreement (id. ¶ 5), return of documents produced to her during the CP Action (id.), and non-performance of stenographic services competitive with KLW during the relevant

21

time period.  (Id. ¶ 6.)  Only if Plaintiff breached one of those duties would she be in "default" entitling Defendant to then bring suit and seek attorneys' fees.  Defendant has not alleged any such default.

Moreover, Plaintiff's filing of a confession of judgment and commencement of litigation, albeit unsuccessfully, does not entitle Defendant to recover attorneys' fees.  Pennsylvania follows the "general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception."  Merlino v. Del. Cnty, 728 A.2d 949, 951 (Pa. 1999); see also Lewis v. Delp Family Powder Coatings, Inc., No. Civ.A.08-1365, 2011 WL 123027, at *6 (W.D. Pa. Mar. 31, 2010).  The Settlement Agreement, in this case, could have provided that in the event one party initiates litigation and is unsuccessful, the other party can recover reasonable attorneys' fees.  It does not do so.  Rather, it only states that "if either party is in default and litigation is filed, *the defaulting party* shall be liable for the reasonable attorneys' fees and costs of the non-defaulting party."  (Settlement Agreement ¶ 4 (emphasis added).)  Moreover, at the time Plaintiff filed for confession of judgment, Defendant was indeed in default on a strictly contractual level. Only upon application of the equitable doctrine of substantial performance has Defendant been relieved of such default and its resulting penalties.

Aside from broad, unsupported allegations regarding Plaintiffs' actions, Defendant points this Court to no law entitling him to relief on his Counterclaim.  Accordingly, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment on the Counterclaim.

**IV.     CONCLUSION**

It is obvious that the parties to this litigation harbor some ill will towards each other causing both to act with a lack of good faith.  Defendant, on one hand, has operated on the fringe of the Settlement Agreement by waiting until the last possible moment to make his installment payments and was ultimately caught in a default situation—albeit one caused by a third party—with no time to remedy it within the cure period.  Plaintiff, on the other hand, has acted with some haste in immediately seizing on the opportunity to file for confession of judgment and refusing to withdraw the litigation when presented with the cause of Plaintiff's default. Ultimately, the most equitable and efficient resolution to this matter is to open the confession of judgment, dismiss both the Complaint and Counterclaim, and leave the parties to carry out what little remains of their negotiated Settlement Agreement.

An appropriate Order follows.