**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANICE M. LEAMAN**, | ) | CIVIL ACTION NO.  2:13-CV-00975 |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GREGG B. WOLFE**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Conti, Chief District Judge for the Western District of Pennsylvania.

## I.   INTRODUCTION

This case arises from the breach of a settlement agreement between two former business partners.  The case has a lengthy procedural history in the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit. In a nonprecedential opinion dated October 6, 2015, the court of appeals remanded the case to the district court to calculate the damages and reasonable attorneys' fees to which plaintiff Janice M. Leaman ("Plaintiff" or "Leaman") is entitled.  On January 4, 2017, the case was reassigned to the undersigned judge pursuant to 28 U.S.C. § 292(b).  (ECF No. 80).[1]

Cross-motions for summary judgment were filed after the remand (ECF Nos. 75, 76). The parties fully briefed the issues and submitted numerous documents in support of their respective positions, including a joint appendix ("J.A.," ECF Nos. 75-4 to 75-11).[2]  After

---

[1] The electronic filings are available on the CM/ECF system for the United States District Court for the Eastern District of Pennsylvania, https://ecf.paed.uscourts.gov/cgi-bin/login.pl
[2] For clarity, the court will cite to specific pages of the joint appendix as "J.A. at __."

thorough consideration, the court will grant Plaintiff's motion in part and will deny the motion filed by Defendant Gregg B. Wolfe ("Defendant" or "Wolfe"), for the following reasons.

## II.   MOTIONS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  *Id.* at 323; *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). Once that burden has been met, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party, and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  In assessing the record, a court must view all facts in the light most favorable to the nonmoving party, and must draw all reasonable inferences and resolve all doubts in that party's favor.  *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005).   The parties agree that the relevant, material facts of this litigation are undisputed.

### III.  FACTUAL AND PROCEDURAL HISTORY

Leaman and Wolfe were long-time business partners and operated a court reporting agency, Kaplan Leaman & Wolfe ("KLW").  In 2010, Leaman filed a state court action against Wolfe arising out of the breakup of that business.  On January 11, 2012, after mediation, the parties entered into a settlement agreement (J.A. at 9-15) and judgment note (J.A. at 16) to resolve their disputes.

Wolfe agreed to make a series of thirty-one installment payments amounting to $475,000 over four years.  (Settlement Agreement ¶ 1, J.A. at 9-10).   If Wolfe missed a payment, he had a ten-day cure period.  The agreement provided:  "Any failure to cure such failure to pay shall constitute a default of this Agreement and render null and void all of its terms, agreements and conditions, except for the Confession of and Consent to Judgment by Wolfe, set forth below." (Settlement Agreement ¶ 1, J.A. at 10).  The confession of judgment clause stated that in the event of an uncured default, Lehman was authorized to file a judgment note for $100,000 in liquidated damages, "plus the entirety of the then unpaid balance of the Settlement Amount and Leaman's attorneys' fees and costs for the filing and enforcement of the Judgment Note." (Settlement Agreement ¶ 4, J.A. at 11).  The clause further provided that "if either Party is in default and litigation is filed, the defaulting party shall be liable for the reasonable attorneys' fees and costs of the non-defaulting party."  *Id*.  In exchange, Leaman promised "not to perform any stenographic services competitive with KLW" during the payment period.  (Settlement Agreement ¶ 6, J.A. at 13).  The agreement provided that if any default occurred, Leaman's non-compete provision "shall become immediately null, void and of no force and effect."  *Id*.  The agreement contained a severability clause, which provided that if any provision shall be declared

3

void or invalid, the remaining provisions "shall remain and in all other respects be deemed valid and enforceable." (Settlement Agreement ¶ 9, J.A. at 13).[3]

From the first payment in April 2012, the parties fell into a predictable pattern: Wolfe would fail to make a timely payment; Leaman would send notice of default; and Wolfe would cure the default by paying on the last possible day. In December 2012 and February 2013, Wolfe failed to cure his defaults within the ten-day cure period.[4] Leaman agreed to accept the December 2012 payment out-of-time.

It is the February 2013 payment that precipitated this litigation. The February 2013 payment of $12,500 was due on February 11, 2013. Leaman notified Wolfe of the default by letter dated the same day, which was received by Wolfe on February 13, 2013. (J.A. at 18-19). UPS lost the February 2013 payment, which Wolfe had sent within the cure period. On February 25, 2013, when payment was not received, Leaman initiated this lawsuit by filing a Complaint in Confession of Judgment for Money Damages in the United States District Court for the Eastern District of Pennsylvania. In the complaint, Leaman sought judgment in the amount of $390,350.00 (which consisted of the unpaid principal balance, $100,000 in liquidated damages, a 20% attorneys' fee of $65,000 and the $350 court filing fee), plus costs and interest. The court promptly entered judgment in favor of Leaman.

Upon learning of the judgment and undelivered check, Wolfe promptly delivered a new check to Leaman by hand. Wolfe filed a motion to strike or to reopen the confessed judgment, which the court granted to permit a trial on the pertinent issues. (ECF No. 9). Wolfe filed an

---

[3] The settlement agreement does not contain a choice of law provision. The parties did not dispute that Pennsylvania law applies. The court has subject-matter jurisdiction based upon diversity of citizenship because the amount in controversy was over $75,000 and Wolfe is a citizen of New Jersey and Leaman is a citizen of Pennsylvania.
[4] Wolfe's son died suddenly on December 19, 2012.

answer, affirmative defenses and a counterclaim against Leaman for breach of the settlement agreement.  The parties stipulated that Plaintiff's complaint stated two independent claims:  (1) confession of judgment; and (2) breach of contract.  After apparently contentious discovery, the parties filed cross-motions for summary judgment.

On July 10, 2014, the district court issued a memorandum opinion and order.  The court granted summary judgment in favor of Wolfe on the complaint, and to Leaman on the counterclaim.  (ECF Nos. 51, 52).  The court reasoned that although Wolfe had technically defaulted, his default was excused by the equitable doctrine of substantial performance.  The court observed that both parties had acted with ill will toward each other:  Wolfe by delaying his installment payments until the last possible moment and Leaman by seizing on the opportunity to confess judgment and refusing to withdraw it after learning about the mistake made by UPS.  The court concluded that the most equitable resolution was to reopen the confession of judgment, dismiss all claims, and leave the parties to perform the remainder of their settlement agreement.

Leaman appealed.  Throughout the time period of the litigation, Wolfe made monthly payments on the unpaid principal balance.  (J.A. at 31).  Wolfe paid the entire principal balance prior to resolution of the appeal.  (J.A. at 31).  On October 6, 2015, the United States Court of Appeals for the Third Circuit vacated the district court's decision in a nonprecedential opinion.  (J.A. 24-30, also filed at ECF No. 56).  The court of appeals held that the doctrine of "substantial performance is not a valid defense in a suit against a party for damages."  (J.A. at 27).   The court of appeals concluded that the $100,000 liquidated damages provision was a penalty and unenforceable, but recognized that Leaman is entitled to damages.  (J.A. at 29).  The court stated: "Leaman is entitled to those damages that will put her in the position she would have been in but for the breach."  (J.A. at 30).  On remand, the district court was instructed to "calculate a

reasonable estimate of damages based on the applicable interest rate." *Id*.  The court of appeals also held that, as contemplated by the settlement agreement, "Leaman is also entitled to what the District Court deems to be a reasonable attorneys' fee." *Id*.  The case was remanded for the district court to consider the appropriate measure of damages.


IV.    **LEGAL ANALYSIS**

Leaman contends that judgment for $81,029.89 should be entered in her favor.  This amount consists of: (1) interest of $10,523.97; and (2) attorney fees and costs of $70,505.92. Leaman also seeks the opportunity to prove at trial "lost opportunity" damages of $230,000 and to recover the additional attorneys' fees she will incur in that endeavor.  The joint appendix contains an interest calculation (J.A. at 31-32), attorney time records (J.A. 33-93), and declarations from Leaman and attorneys William Einhorn and Benjamin Anderson (J.A. 94-100).

Defendant presents a vastly different proposal -- that judgment for $641.78 be entered in favor of Leaman.  This amount consists of: (1) interest of $26.65; (2) attorney fees of $265.13; and (3) the $350 court filing fee.  Defendant argues that: (1) during the time period of the litigation Leaman received and accepted all remaining installment payments due under the settlement agreement within each month's cure period; (2) Leaman's attempt to recover $100,000 in liquidated damages was rejected by the courts; (3) Leaman's first attorney, William Einhorn, was also her husband, and his itemization (J.A. at 33-35) does not include an hourly rate or actual charges; and (4) Leaman never previously claimed accelerated interest or "lost opportunity" damages.  In response, Leaman points out that she had no reason to seek those damages until the court of appeals denied her claim for $100,000 in liquidated damages.

The court must perform the task assigned to it by the court of appeals and effectuate the intent of the parties, as reflected in the terms of the settlement agreement.  The legal principles governing enforcement of settlement agreements were succinctly summarized in *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 535–36 (E.D. Pa. 2015):

> "The validity and enforceability of settlement agreements is governed by state contract law." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 Fed. Appx. 194, 200 (3d Cir. 2012). "It is by now axiomatic under Pennsylvania law that 'the test for enforceability of [a settlement] agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced.'" *Calif. Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, 369 Fed. Appx. 340, 346 (3d Cir. 2010) (*quoting Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986)). "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Espenshade v. Espenshade*, 729 A.2d 1239, 1243 (Pa. Super. Ct. 1999).

The court must determine the damages and counsel fees to which Plaintiff is entitled.

### A. Interest

Other than the lost opportunity damages, the main dispute with respect to damages involves prejudgment interest.  Leaman seeks to enforce the settlement agreement's acceleration clause.  Leaman reasons that because Wolfe defaulted under the agreement, the entire unpaid balance became immediately due.  She argues that interest accrued on that unpaid balance.  The complaint in this case reflects that she was asserting an immediate right to the unpaid principal balance.  (Complaint ¶ 14, J.A. at 4).  While Wolfe's payments continued over the next twenty months, Leaman argues that her acceptance of the subsequent monthly payments constituted reasonable mitigation of her damages and she did not waive her right to acceleration.  Wolfe contends that the only interest due is on the February 2013 payment that was lost by UPS (thirteen days at six percent interest on the late payment of $12,500).  Wolfe focuses on the court of appeals' instruction to put Leaman "in the position she would have been in but for the

breach." (J.A. at 30). Wolfe reasons that without the breach, Leaman would have been entitled to twenty monthly installment payments, which is exactly what she received. Wolfe also argues that Leaman waived her claim to interest on accelerated principal because she did not previously raise this argument. Leaman responds that this theory became ripe only after the court of appeals denied her claim for $100,000 in liquidated damages.

Wolfe makes compelling equitable arguments for his position. It is clear that after February 2013 Leaman received actual payments from Wolfe within the cure periods anticipated under the original schedule set forth in the settlement agreement. The court of appeals, however, rejected Wolfe's equitable defense of substantial performance. Thus, this court must determine the legal rights of the parties, as set forth in their settlement agreement.

In *Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh*, 776 F.2d 1174 (3d Cir. 1985), the court of appeals explained: "when a defendant breaches a contract to pay a definite sum of money, interest is payable 'from the time performance was due.'" *Id*. at 1178 (*quoting Penneys v. Penn. R.R. Co*., 183 A.2d 544, 546 (Pa. 1962)). "Assessment of such interest does not depend upon discretion but is a legal right." *Id*. The award of prejudgment interest for breach of contract is not punitive, but instead is intended to compensate the non-breaching party for the loss of use of the money. *Atlin v. Security-Connecticut Life Ins. Co*., 788 F.2d 139, 141 (3d Cir. 1986).

In February 2013, Wolfe defaulted on his obligations under the settlement agreement and failed to timely cure that default. The settlement agreement contains unambiguous language that governs the consequences. Upon a failure to timely cure a default, the entire unpaid balance could be accelerated and become immediately due. Paragraph 4 of the settlement agreement provides that Leaman is authorized to confess judgment for $100,000, "plus the entirety of the

then unpaid balance of the Settlement Amount." (J.A. at 11). Although the court of appeals held

that the $100,000 liquidated damages provision was unenforceable, the settlement agreement

contains a severability provision which reflects that if any provision is found to be invalid, the

remaining parts or provisions remain valid and enforceable. (J.A. at 13). Acceleration clauses

are valid and enforceable under Pennsylvania law. *Royal Bank of Pa. v. 1600 Walnut St. Assocs.*,

No. CIV. A. 91-0969, 1991 WL 78189, at *2 (E.D. Pa. May 7, 1991) ("Acceleration clauses are

common elements of business loans and are enforceable under Pennsylvania law so long as a

stated default exists and the option to accelerate is exercised by the mortgagee...."). In *Deek

Investments, L.P., v. Murray*, No. 91-09071, 2005 WL 4979922 (Pa. Ct. Com. Pl., June 20, 2005)

(cited by the court of appeals' opinion in this case, J.A. at 30), the court explained that the

plaintiff was entitled to recover interest from the date all payments should have been made until

the date of payment.

By letter dated February 11, 2013, (J.A. at 18), Leaman gave Wolfe proper notice that he

was in default and she intended to strictly enforce the confession of judgment provisions of the

settlement agreement. Because the acceleration clause is valid, the total unpaid balance became

immediately payable on February 25, 2013, the date the complaint was filed in this case and

Leaman accelerated the unpaid principal balance. Under those circumstances, Leaman is entitled

to prejudgment interest because Wolfe did not immediately pay the principal balance; rather,

Wolfe made payments over twenty months.

The parties agree that the applicable interest rate is six percent. The court accepts the

calculation of interest submitted by Leaman, which is based on six percent interest on the

accelerated unpaid balance beginning on February 25, 2013 (the date on which payments were

accelerated). As Wolfe paid off the principal over the next twenty months, the balance on which

interest was calculated decreased.  (J.A. at 31).  Although Wolfe objects, generally, that the calculation is "undecipherable and unsupported," he pointed to no specific error and did not provide an alternative calculation.  Leaman's calculation is reasonable and consistent with the acceleration clause in the settlement agreement.  Under its terms, once the unpaid principal balance was accelerated on February 25, 2013, Wolfe was required to pay the entire unpaid balance of $212,500.00.  Because the actual payments were made over twenty months, Leaman is entitled to interest for the time value of the delayed principal payments.  In sum, Leaman is entitled to recover $ 10,523.97 in interest.

### B.  Counsel Fees

The court of appeals held that Leaman is "entitled to what the District Court deems to be a reasonable attorneys' fee."  (J.A. at 30).  Paragraph 4 of the settlement agreement provides that "if either Party is in default and litigation is filed, the defaulting party shall be liable for the reasonable attorneys' fees and costs of the non-defaulting party."  (J.A. at 11).  Thus, since Wolfe was in default, he must pay Leaman her "reasonable" attorneys' fees.  The parties vigorously dispute what fees are "reasonable."  Leaman argues that she is entitled to $70,505.92, the full amount of her counsel fees as calculated under the lodestar method.  She contends that all work performed in this litigation was necessary to obtain relief.  Wolfe argues that Leaman is only entitled to attorney fees of $265.13 (1.3 hours to prepare the initial Complaint in Confession of Judgment at a rate of $203.95/hour).  He contends that the only necessary legal action was the filing of the initial complaint, and that the remainder of Leaman's efforts have been fruitless.

In *McKenna v. City of Philadelphia*, 582 F.3d 447 (3d Cir. 2009), the court summarized the legal principles which guide the calculation of reasonable counsel fees:

> The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the "number of hours reasonably expended

on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). *Hensley* instructs that courts are to exclude from the determination of the lodestar any hours not reasonably expended. Hours subject to exclusion under *Hensley* include those deemed "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. at 1939–40. A court's calculation of the lodestar, however, does not end its inquiry on a fee application. A district court can adjust a fee award upward or downward based upon the results obtained in a case. *Id.* at 434, 103 S.Ct. at 1940. In addition, an attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *See id.* at 434–35, 103 S.Ct. at 1940 (internal quotation marks omitted). Moreover, as we have held, "the District Court has a positive and affirmative function in the fee fixing process, not merely a passive role" and "should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).

*Id.* at 455.

The court rejects Wolfe's argument that <u>no</u> counsel fees incurred during the litigation can be recovered by Leaman.  The court of appeals has explained:  "A plaintiff is a 'prevailing party' for the purposes of an attorney's fee award if she succeeds 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Mancini v. Northampton Cty.*, 836 F.3d 308, 321 (3d Cir. 2016) (citations omitted).  In this case, Leaman succeeded on significant issues and must regarded as a "prevailing party."  "[C]ourts should not reduce fees simply because some of a prevailing party's related claims are unsuccessful." *McKenna*, 582 F.3d at 457.  The mere failure to be successful on certain motions is also insufficient to warrant a fee reduction under *Hensley. Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir. 1987).  In remanding this case, the court of appeals cited *Deek*, 2005 WL at 4979922, for the proposition that Leaman is entitled to recover "attorneys' fees incurred by plaintiff in pursuit of [her] payment."  (J.A. at 30).  Leaman's entitlement to counsel fees throughout the litigation is

particularly appropriate in this case, in which she lost in the district court but prevailed (in part) on appeal.

### 1. Lodestar Calculation

Wolfe makes only one specific criticism of the lodestar calculation submitted by Leaman. With respect to the hourly rate, he points out that Leaman's first attorney, William Einhorn, was also her husband, and Einhorn's itemization does not include an hourly rate or actual charges. Wolfe contends that Einhorn's claimed hourly rate of $ 400 per hour is excessive, and suggests a rate of $203.95, which is the average hourly rate charged on this case by Leaman's second law firm, Powell, Trachtman, Logan, Carrle & Lombardo ("PTLCL").

The court agrees with Wolfe that the blended hourly rate actually charged by Leaman's second law firm on this same case is a better reflection of the prevailing rate for the services Einhorn provided. Einhorn did not aver that $400 per hour is his standard rate (he stated only that it was a "reasonable market rate") and, in any event, that rate would not necessarily be appropriate for all the tasks he performed in this case. *See, e.g., Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn"). Thus, the court will apply an hourly rate of $203.95 for Einhorn's time spent on this litigation. Wolfe did not challenge the hourly rates of any of the PTLCL lawyers or the amount of hours claimed by any of Leaman's attorneys as excessive.[5]

---

[5] There is one minor dispute. Wolfe asserts that Einhorn spent 1.3 hours to prepare and file the complaint. Leaman claims 1.8 hours related to such activities. The parties' positions are easily harmonized – the first 1.3 hours occurred on 2/24/13 and 2/27/13; the additional 0.5 hours occurred on 2/28/13. (J.A. at 33). Thus, the correct amount of time is 1.8 hours.

The court's lodestar calculation is as follows:

| | | | |
|---|---|---|---|
| Einhorn: | 50.3 hours @ $203.95/hour | = | $ 10, 258.69 |
| Burkholder: | 78.5 hours @ $225/hour | = | $ 17,662.50 |
| Andersen: | 136.7 hours @ $200/hour | = | $ 27,340.00 |
| Henry: | 0.4 hours @ $175/hour | = | $      70.00 |
| Henry (clerk): | 7.5 hours @ $75/hour | = | $     562.50 |
| Singh: | 4.6 hours @ $175/hour | = | $     805.00 |
| TOTAL | | | $ 56,698.69 |

*See* Chart, ECF No. 75-2 at 7.


2.   Adjustment of Lodestar

If a plaintiff has achieved only partial or limited success, the lodestar calculation may be

excessive. *Hensley*, 461 U.S. at 436. "How to measure the degree of success is left to the district

court's discretion." *Mancini*, 836 F.3d at 321.  However, "the Supreme Court has rejected a fee

calculation approach that compares the total number of issues in the case with the number of

issues on which the plaintiff prevailed."  *Id*.   "When the prevailing party has only succeeded on

some claims, the court must address (1) whether the unsuccessful claims were unrelated to the

successful claims; and (2) whether the plaintiff achieved a level of success that makes the hours

reasonably expended a satisfactory basis for making a fee award." *Blakey v. Cont'l Airlines, Inc*.,

2 F. Supp. 2d 598, 605 (D.N.J. 1998).  The court concludes that Leaman's claims in this

litigation are intertwined because they arise out of the same settlement agreement, which makes

it difficult to separate time spent on each claim.  The court is not able to identify any fees as

relating solely to distinct, unsuccessful claims.

13

The analysis, however, is not over.  The court of appeals has instructed that where claims are interrelated, the district court should not attempt to identify specific hours spent on the unsuccessful claims to exclude them from the lodestar. *Johnson v. Orr*, 897 F.2d 128, 132 (3d Cir. 1990) (Becker, J., concurring). Instead, the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435.  The fee award should be reduced if the relief obtained is limited in comparison to the scope of litigation as a whole.  *Id*. at 440;  *see generally Blakey*, 2 F. Supp. 2d at 606–07.

In *Blakey*, the plaintiff was successful on only one of several discrimination claims and was unsuccessful on a distinct defamation claim.  The court denied fees related to the distinct, unsuccessful defamation claim.  With respect to the fees related to the discrimination claims, the court was unable to parse out services related to the successful claim from the services related to the unsuccessful claims.  The court reduced the overall lodestar calculation by thirty percent to account for the services for the unsuccessful claims.  In *Shelton v. Restaurant.com Inc*., No. CV10824, 2016 WL 7394025, at *17 (D.N.J. Dec. 21, 2016), the court of appeals remanded the case for a determination of counsel fees after a lengthy, partially-successful litigation.  On remand, the district court determined when comparing the overall relief obtained by the plaintiff to the hours reasonably expended on the litigation, the lodestar calculation was "grossly excessive" and reduced the fees and costs by thirty-five percent.  In *Gadley v. Ellis*, Civ. NO. 3:13-17, 2016 WL 1090654 (W.D. Pa. Mar. 18, 2016), the court reduced counsel fees by half, to reflect work done on unsuccessful claims.  In *Souryavong v. Lackawanna Cty*., 159 F. Supp. 3d 514, 540-42 (M.D. Pa. 2016), the court departed downward from the lodestar by more than two-thirds, citing numerous decisions where the courts made similar or larger reductions.

14

The assessment of success is complicated in this case because both sides achieved some success in the litigation.  Wolfe was able to open the original confessed judgment of $390,350.00 and defeated Leaman's claim for $100,000 in liquidated damages.  His obligation to pay the remaining $212,500 was never in dispute.  In fact, Wolfe continued to make the monthly payments throughout the litigation.  Leaman, however, also was successful, in part, in this litigation.  She obtained a finding on appeal that Wolfe defaulted under the agreement, and she overcame his "substantial performance" defense.  Wolfe's counterclaim was dismissed.  Wolfe never paid interest on the accelerated balance, which as explained above, Leaman is entitled to recover.  Ongoing litigation has been necessary for Leaman to obtain the interest and reasonable counsel fees.

Because Wolfe is the defaulting party, Leaman is entitled to reasonable counsel fees.  Wolfe prevailed on the largest sum in dispute, the $100,000 liquidated damages.  Leaman prevailed on her entitlement to interest in the amount of $10,523.97on the accelerated unpaid balance.  Both parties contributed to the contentious and extensive litigation in this case.  After balancing these factors, the court concludes that the lodestar amount is excessive in comparison to the results achieved and must be decreased by fifty percent.  Leaman may recover as reasonable counsel fees one half of the lodestar (0.5 x $56,698.69), which equals $28,349.35.

### C.  "Lost Opportunity" Damages

Finally, Leaman contends that she is entitled to "lost opportunity" damages to put her in the position she would have been in but for the breach.  She calculates that she would have earned revenue of $230,000 as a court reporter in the twenty months remaining on the contractual term following Wolfe's breach.  ECF No. 75-10.  Leaman recognizes that a trial on

15

the amount of those damages would be necessary.  Wolfe vigorously argues that Leaman is not entitled to "lost opportunity" damages.

The court is not persuaded by Leaman's argument.  The settlement agreement did not provide for the recovery of "lost opportunity" damages.  Instead, the parties' agreement provided a different remedy.  If any default occurred, Leaman's noncompete provision "shall become immediately null, void and of no force and effect."  Agreement ¶ 6.  In fact, Leaman's Notice of Default letter dated February 11, 2013, explicitly warned Wolfe that his default would render her noncompete promise null and void.  (J.A. at 18).  Upon Wolfe's breach, Leaman was entitled immediately to perform competitive court reporting services.  That Leaman failed to exercise this right does not entitle her to collect "lost opportunity" damages now.  The court must reject Leaman's claim for "lost opportunity" damages.

### D.  Costs

Both parties referred to "costs" in their proposed orders.  Leaman did not provide a separate itemization of the costs.[6]  Wolfe contends that the only recoverable cost is the $350 filing fee.  In *Harris v. Paige*, No. CIV.A. 08-2126, 2013 WL 4718949 (E.D. Pa. Sept. 3, 2013), the court refused a similar request for a court to award costs and explained:  "Under the procedures outlined in Fed. R. Civ. P. 54(d)(1), the Clerk taxes costs, and then, if there is an objection to the Clerk's action, the District Court reviews the Clerk's award."  *Id*. at *9 n.18 (*citing McKenna*, 582 F.3d at 454, and *Reger v. The Nemours Found. Inc*., 599 F.3d 285, 287 (3d Cir. 2010)).  Accordingly, this court declines to award costs.  Leaman must first submit a bill of costs to the clerk of court in accordance with Local Rule 54.1 of the United States District Court for the Eastern District of Pennsylvania.

---

[6] Einhorn's time entries reflect the $350 filing fee  (J.A. at 35), and costs are scattered throughout the PTLCL records.

16

**V.   CONCLUSION**

For the reasons set forth above, Leaman's motion for summary judgment (ECF No. 75) will be granted in part and denied in part and Wolfe's motion for summary judgment (ECF No. 76) will be denied.  Leaman is entitled to recover damages for interest in the amount of $10,523.97 and reasonable attorneys' fees of $28,349.35.  Leaman is not entitled to recover "lost opportunity" damages.  Judgment will be entered in favor of Leaman and against Wolfe in the total amount of $38,873.32.

An appropriate order and judgment will be entered.

Dated: February 9, 2017

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief Judge, U.S. District Court